901 So.2d 233 (2005)
Joseph B. TURNER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-80.
District Court of Appeal of Florida, Fifth District.
April 15, 2005.
*234 James S. Purdy, Public Defender, and Scott Ragan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Joseph Turner appeals his convictions *235 and sentence for robbery,[1] resisting an officer with violence,[2] depriving an officer of protection or communication,[3] and possession of cannabis.[4] We affirm.
Prior to trial, Turner elected to waive counsel, and after conducting a Faretta[5] hearing, the trial court allowed Turner to represent himself. At trial, witnesses identified Turner as the person who robbed a bank. There was testimony that after being stopped by police, a struggle ensued. Turner began kicking an officer, another officer's radio became disabled, and Turner fled. Thereafter, Turner was taken into custody by another police officer. The jury found Turner guilty as charged, and the trial court found that Turner qualified as a prison releasee reoffender ("PRR")[6] for the offenses of robbery and resisting an officer with violence.
Turner contends that the inquiry made by the trial court during the Faretta hearing was inadequate because it failed to discuss the advantages of having professional counsel and the disadvantages of self-representation. We disagree. A Faretta hearing requires that a defendant's decision to represent himself be made knowingly and intelligently. Gillyard v. State, 704 So.2d 165 (Fla. 2d DCA 1997).
When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must `knowingly and intelligently' forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'
Faretta, 422 U.S. at 835, 95 S.Ct. 2525; see also Fla. R.Crim. P. 3.111(d)(2) and (3).
In the instant case, the trial court informed Turner that he could either represent himself or have his attorney continue to represent him. After Turner stated that he wanted to represent himself, the trial court commented that it thought it was unwise for Turner to represent himself. Upon inquiry by the court, Turner stated that he had never been a part of a trial before, picked a jury, or made an opening or closing statement in a trial. Turner stated that he had read the Florida statutes pertaining to his case and that he understood jury instructions. The trial court explained that if Turner made a mistake at trial, there would be no one to blame but himself, but that if Turner had an attorney, there was the potential for some remedy in collateral attacks. Turner did not agree with the trial court that it was dangerous to represent himself. The trial court asserted and Turner understood that the state was seeking 30 years if he was convicted, with 15 years as a PRR. Turner stated that his highest level of education was technical school where he had taken some law courses. Turner denied having mental or physical health problems, or taking any medications. The trial court repeatedly asked Turner if he was positive that he wanted to represent himself, and Turner again affirmed his decision. *236 The trial court found that Turner knowingly and intelligently waived counsel. After jury selection, the trial court again asked Turner if he wanted to represent himself, and Turner again affirmed his decision. Again, the trial court posed the question to Turner before opening statements, and Turner replied that he did not want counsel representing him. We conclude that Turner knowingly and intelligently waived counsel.
Next, Turner argues that the trial court's consecutive sentencing for crimes arising from the same criminal episode is impermissible pursuant to the PRR Act. In this case, the trial court found that Turner qualified as a PRR for the offenses of robbery and resisting an officer with violence. Turner was sentenced to 15 years for the robbery offense, and 5 years for the offense of resisting an officer with violence to run consecutive. Turner argues that the offenses of robbery and resisting an officer with violence were essentially one continuing episode, and therefore, the trial court erred in ordering consecutive sentences pursuant to the PRR Act.
In determining whether offenses arise from the same criminal episode requires consideration of the following factors: 1) whether separate victims are involved; 2) whether the crimes occurred in separate locations; and 3) whether there has been a temporal break between incidents. Anderson v. State, 877 So.2d 958, 959 (Fla. 5th DCA 2004). A trial court's decision concerning whether two offenses were committed during a single criminal episode will be upheld if supported by competent, substantial evidence. Colson v. State, 678 So.2d 1354 (Fla. 1st DCA 1996).
At sentencing, the trial court stated:
In count one, the robbery, I'm sentencing you to 15 years in the state prison.
On count twoand I'm going toin sentencing on count[s] two and three, I'm going to make a finding that these arethe robbery is separate and apart from the events that happened during your apprehension, those being resisting an officer with violence and depriving an officer with violence and depriving an officer of means of protection.
I'm specifically finding that there was a robbery and that you successfully escaped from the scene of the robbery, that although you were able to gather money, apparently, were provided with dye pack, that you were able to leave the scene. I believe there was some differential in your clothing, which suggests that you had time to change your clothing to make your identity more difficult. You obviously had time to take the money and pack it in the console of the vehicle and begin your flight and escape from the scene of the robbery.
It seems to me that these are two separate and distinct incidents. You had a perfect opportunity to respond to the police officers and you declined to do that by committing the offenses of resisting with violence and depriving an officer with means of protection.
* * *
That, to me, is a totally separate transaction from the robbery that was witnessed by the people at the bank and I am going to so find.
That having been said, I'm going to sentence you on count two to five years in the state prison to run consecutive on count one [robbery].
We conclude that there was competent, substantial evidence to support the trial court's finding that the two offenses were *237 not part of the same criminal episode. The offenses occurred at two separate locations. The robbery occurred at a bank, and the resisting an officer with violence offense occurred some time later about two miles away. Additionally, the victims of each offense were not the same. Finally, there was a temporal break. The trial court found that between the commission of the two offenses, Turner had time to change his clothes, apparently after the dye pack activated, and he also had time to hide the money in the console of the vehicle.
AFFIRMED.
PALMER and ORFINGER, JJ., concur.
NOTES
[1] § 812.13(1)(c), Fla. Stat.
[2] § 843.01, Fla. Stat.
[3] § 843.025, Fla. Stat.
[4] § 893.13(1)(a), Fla. Stat.
[5] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[6] § 775.082(9)(a)1, Fla. Stat.